**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

In re:                                    )
Hal Edwin Buettner, III, and              )
Michele Kay Elkins,                       )    Case No. 16-26531-C-13G
                    Debtors.              )
_____          )    Adv. Pro. No. 22-02015-C
Hal Edwin Buettner, III, and              )
Michele Kay Elkins,                       )    Consolidated
                    Plaintiffs,           )
v.                                        )    DCN BWW-001
                                          )
PHH Mortgage Corporation,                 )
                    Defendants.           )_____
In re:                                    )
Kevin Randall Krone,                      )
                    Debtor.               )
_____          )    Case No. 15-21528-A-13C
Kevin Randall Krone,                      )
                    Plaintiff,            )    Adv. Pro. No. 22-02038-C
v.                                        )
                                          )    Consolidated
PHH Mortgage Corporation, and             )
Deutsche Bank National Trust              )    DCN BWW-001
Company,                                  )
                    Defendants.           )

**ORDER AMENDING OPINION**

The Opinion filed by this court on October 11, 2023, is hereby amended to correct nonsubstantive typographic errors.

The sentence on Page 14, lines 14-16, is corrected to read: "PHH's contention in this case that there is no federal statutory or common law lien removal authority necessitates explaining federal lien removal."

A copy of the complete Opinion in corrected form is attached hereto

Dated: October 17, 2023

_____
United States Bankruptcy Judge

**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br>Hal Edwin Buettner, III, and<br>Michele Kay Elkins,<br>　　　　　　Debtors.<br>_____<br>Hal Edwin Buettner, III, and<br>Michele Kay Elkins,<br>　　　　　　Plaintiffs,<br>v.<br><br>PHH Mortgage Corporation,<br>　　　　　　Defendants. | Case No. 16-26531-C-13G<br><br>Adv. Pro. No. 22-02015-C<br><br>Consolidated<br><br>DCN BWW-001 |
| _____<br>In re:<br>Kevin Randall Krone,<br>　　　　　　Debtor.<br>_____<br>Kevin Randall Krone,<br>　　　　　　Plaintiff,<br>v.<br><br>PHH Mortgage Corporation, and<br>Deutsche Bank National Trust<br>Company,<br>　　　　　　Defendants. | Case No. 15-21528-A-13C<br><br>Adv. Pro. No. 22-02038-C<br><br>Consolidated<br><br>DCN BWW-001 |

**OPINION**

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

　　Wholly unsecured junior mortgages may be "stripped off" and rendered "void" in chapter 13 cases by virtue of 11 U.S.C. §§ 506(d) and 1322(b)(2) once plan payments are complete. The chapter 13 plan confirmation order determines the rights of the junior mortgagee. The problem is how to implement the "strip off" when unsecured junior mortgagees do not cooperate to clear title.

　　The issue in these quiet title actions is whether Bankruptcy Courts have the power to order liens removed and to clear title following completion of chapter 13 plan payments that render "void" and "strip off" wholly unsecured mortgage liens pursuant to § 506(d).  The answer is yes; Federal Rule of Bankruptcy

Procedure 7070, incorporating Federal Rule of Civil Procedure 70, embodies a federal lien removal power, which has been recognized for more than a century, permitting federal courts to remove liens and clear title.

The Rule 7070 federal cause of action is a species of <u>in rem</u> judgment enforcement in which the judgment being enforced is the final § 1322(b) order confirming the chapter 13 plan, which order has res judicata effect and renders a lien "void" under § 506(d) upon completion of plan payments.

Defendant PHH Mortgage Corporation[1] contends on summary judgment that there is no statutory or common law basis for the federal cause of action and that, in any event, it was mooted when PHH reconveyed during the adversary proceeding. PHH is not correct – there is such a cause of action and belated reconveyances by PHH in response to the filing of the Complaint make the Plaintiffs "prevailing parties" for purposes of their demands for attorneys' fees under California Civil Code § 1717.

There is no genuine issue of material fact that the Plaintiffs are "prevailing parties" on the federal count. The actions qualify as "on the contract" for purposes of California Civil Code § 1717, entitling Plaintiffs to invoke the attorneys' fee provisions in the underlying notes and deeds of trust.

As PHH has been fully heard on the federal cause of action and on eligibility for attorneys' fees and cannot win as a matter of law, summary judgment will be entered for nonmoving parties.

---

[1] PHH Mortgage Corporation ("PHH") is successor by merger to Ocwen Loan Servicing, LLC, which was successor in interest to Residential Funding Corporation. Buettner Adv. Dkt. #54 at 7; Krone Adv. Dkt. # 37 at 7. Party names are restated as PHH.

## Proceedings

These identical actions were consolidated because PHH is lackadaisical (710 and 180 days) about reconveying deeds of trust rendered void upon completion of chapter 13 payments.

The Complaint alleges five counts: declare value of deed of trust under federal Law; extinguish lien under federal law; violation of California Civil Code § 2941(d); breach of contract; and attorneys' fees.

PHH's summary judgment motion addressing the federal law counts contends: (1) there is no applicable federal statutory or common law cause of action; (2) any such action became moot upon reconveyance; and (3) attorneys' fees are not available.

As will be explained, construing the record in the light most favorable to the losing party, there is no genuine issue of material fact that the Plaintiffs are "prevailing parties" on their federal lien removal counts and that they are entitled to judgment as a matter of law regarding their entitlement to fees.

This determination under federal law renders it unnecessary to rule on state-law issues (Civil Code § 2941 and breach of contract), even though they lead to similar results under California law, but not necessarily under law of other states.

## Jurisdiction

Subject-matter Jurisdiction is based on 28 U.S.C. § 1334(a). In rem jurisdiction over property of the debtor as of the filing of the case is founded on 11 U.S.C. § 1334(e)(1). Venue is authorized by 28 U.S.C. § 1655 and Fed. R. Bankr. P. 7070. This is a core proceeding. 28 U.S.C. §§ 157(b)(2)(B), (K), (L), & (O).

## Summary Judgment Facts

These junior mortgages dating from 2006 are relics of the housing mortgage bubble that collapsed into the Great Recession. The easy money financing scheme that inflated the bubble was to issue a first mortgage that arguably met underwriting standards on a sketchy appraisal and a second mortgage for an additional inflated purchase price, all on the fantasy that eternally rising real estate values assured eventual payment in full.

These second mortgages are completely underwater.

## Plaintiff Krone

Plaintiff Krone executed a "Secondary Lien Note" for $61,740.00 and a "Secondary Lien Deed of Trust" on February 1, 2006, on real property in Yuba City, California.

Krone filed a chapter 13 case on February 27, 2015. Pursuant to § 506(a), the PHH secured claim on the secondary deed of trust was valued by court order at $0.00, leaving an allowed unsecured claim. The chapter 13 plan was confirmed and performed. Notice of Completed Plan Payments was docketed September 11, 2020. The Trustee's Final Report and Account filed December 11, 2020, reported PHH was paid $41,365.80 on its allowed unsecured claim.

Krone's counsel thrice informed PHH of its duty to reconvey the secondary deed of trust: December 12, 2020; February 6, 2021; and May 30, 2021. Stonewall.

Krone filed his adversary proceeding on June 22, 2022, after more than nineteen months of PHH inaction.

PHH recorded a Full Reconveyance of the Secondary Deed of Trust on August 22, 2022, 710 days after the lien became void

4

upon completion of plan payments.

### Plaintiffs Buettner and Elkins

Plaintiffs Buettner and Elkins executed a Note and Security Agreement for $110,685.00 and a Deed of Trust on a "California Second Mortgage" form on January 24, 2006, regarding real property in Rancho Cordova, California.

Buettner and Elkins filed a chapter 13 case on September 30, 2016. The order valuing the PHH secured claim at $0.00 left PHH with an allowed unsecured claim. The chapter 13 plan was confirmed and performed. Notice of Completed Plan Payments was docketed on September 24, 2021. The Trustee's Final Report and Account filed December 11, 2020, reported $58,646.62 was paid on unsecured claims totaling $67,216.98.

On January 25, 2022, their counsel communicated to PHH its duty to reconvey the secondary deed of trust.

With no response from PHH, this adversary proceeding was filed March 4, 2022. A full reconveyance of the secondary deed of trust was recorded on March 23, 2022, 180 days after the lien became void upon completion of plan payments.

### Analysis

#### I

#### Federal Cause of Action

When a lien on property in the jurisdiction of the District Court (including its Bankruptcy Court "unit") is not timely removed, the federal court has a tool at hand.

The federal court's power to enforce any lien upon or claim

to, or to remove any incumbrance or lien or cloud upon the title
to, real or personal property within the jurisdiction of the
court is a species of judgment enforcement.

The substantive judgment being enforced is the order
confirming the chapter 13 plan under § 1322(b)(2) that values the
lien at $0.00, the consequence of which is that the lien is
"void" by virtue of § 506(d) contingent only upon completion of
plan payments.

The recognition of the power to remove encumbrances dates
back at least to 1911 when Congress vested the lien removal power
in the District Court.[2]

The lien removal power survived the merger of law and equity
in 1938, and is now found at 28 U.S.C. § 1655,[3] in tandem with
Federal Rule of Civil Procedure 70 and Federal Rule of Bankruptcy
Procedure 7070.

The substantive judgment enforcement aspects of the lien
removal power itself are now in Civil Rule 70, as expanded by

---

[2]Congress specified in 1911 that:

> When in any suit commenced in any district court of the
> United States to enforce any legal or equitable lien upon or
> claim to or to remove any incumbrance or lien or cloud upon
> title to real or personal property within the district where
> such suit is brought, one or more of the defendants therein
> shall not be an inhabitant of or found within the said
> district, or shall not voluntarily appear thereto, it shall
> be lawful for the court to make an order directing such
> absent defendant or defendants to appear, plead, answer, or
> demur by a day certain ...

Act of Mar. 3, 1911, ch. 231, § 57, 36 Stat. 1102.

[3]28 U.S.C. 1655 was enacted by Act of June 25, 1948, ch.
646, 62 Stat. 944. The Historical and Revision Notes explain:
Based on title 28, U.S.C., 1940 ed., § 118, Act of Mar. 3, 1911,
ch. 231, § 57, 36 Stat. 1102.

Bankruptcy Rule 7070, which descends from former Equity Rules.[4]

   If a party does not comply with a judgment requiring conveyance of land, delivery of a deed or other document, or performance of some other specific act, then the court may appoint someone to do so at the disobedient party's expense. The disobedient party may be held in contempt. Finally, the court may enter a judgment divesting title and vesting it in others. Fed. R. Civ. P. 70, incorporated by Fed. R. Bankr. P. 7070.[5]

---

[4]The Advisory Committee Note to 1937 adoption of Rule 70:

   Compare Equity Rules 7 (Process, Mesne and Final), 8 (Enforcement of Final Decrees), and 9 (Writ of Assistance). To avoid possible confusion, both old and new denominations for attachment (sequestration) and execution (assistance) are used in this rule. Compare with the provision in this rule that the judgment may itself vest title, 6 Tenn. Ann. Code (Williams 1934), § 10594; 2 Conn. Gen. Stat. (1930), § 5455; N.M. Stat. Ann. (Courtright, 1929), § 117-117; 2 Ohio Gen. Code Ann. (Page 1926), § 11590; and England, Supreme Court of Judicature Act (1925), § 47.

Fed. R. Civ. P. 70, Advisory Committee Note 1937 Adoption.

[5]Bankruptcy Rule 7070 provides:

   Rule 70 F.R.Civ.P. applies in adversary proceedings and the court may enter a judgment divesting the title of any party and vesting title in others whenever the real or personal property is within the jurisdiction of the court.

Fed. R. Bankr. P. 7070.

Fed. R. Civ. P. 70: Enforcing a Judgment for a Specific Act

   (a) Party's Failure to Act: Ordering Another to Act. If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done – at the disobedient party's expense – by another person appointed by the court. When done, the act has the some effect as if done by the party.
   (b) Vesting Title. If the real or personal property is

7

Civil Rule 70 carries forward provisions of former Equity

Rule 8 adopted by the Supreme Court on November 4, 1912.[6]

---

> within the district, the court – instead of ordering the
> conveyance – may enter a judgment divesting any party's
> title and vesting it in others. That judgment has the effect
> of a legally executed conveyance.
>     (c) Obtaining a Writ of Attachment or Sequestration. On
> application by a party entitled to performance of an act,
> the clerk must issue a writ of attachment or sequestration
> against the disobedient party's property to compel
> obedience.
>     (d) Obtaining a Writ of Execution or Assistance. On
> application by a party who obtains a judgment or order for
> possession, the clerk must issue a writ of execution or
> assistance.
>     (e) Holding in Contempt. The court may also hold the
> disobedient party in contempt.

Fed. R. Civ. P. 70.

[6]Former Equity Rule 8 "Enforcement of Final Decrees"
provided in relevant part:

> If the decree be for the performance of any specific act,
> as, for example, for the execution of a conveyance of land
> or the delivering up of deeds or other documents, the decree
> shall, in all cases, prescribe the time within which the act
> shall be done, of which the defendant shall be bound,
> without further service, to take notice; and upon affidavit
> of the plaintiff, filed in the clerk's office, that the same
> has not been complied with within the prescribed time, the
> clerk shall issue a writ of attachment against the
> delinquent party, from which, if attached thereon, he shall
> not be discharged, unless upon full compliance with the
> decree and the payment of all costs, or upon a special order
> of the court, or a judge thereof, upon motion and affidavit,
> enlarging the time for the performance thereof. ... If a
> mandatory order, injunction, or decree for the specific
> performance of any act or contract be not complied with, the
> court or a judge, besides, or instead of, proceedings
> against the disobedient party for a contempt, or by
> sequestration, may by order direct that the act required to
> be done be done, so far as practicable, by some other person
> appointed by the court or judge, at the cost of the
> disobedient party, and the act, when so done, shall have
> like effect as if done by him.

Equity Rule 8 (adopted by U.S. Supreme Court, Nov. 4, 1912).

Bankruptcy Rule 7070 incorporates Civil Rule 70 and expands its geographic scope from "property within the district" to "property within the jurisdiction of the court." Fed. R. Bankr. P. 7070, <u>incorporating</u> Fed. R. Civ. P. 70.[7]

There is two-fold significance of Rule 7070's addition to Rule 70. First, the lien removal power is expanded beyond the boundaries of the judicial district to "all of the property, wherever located, of the debtor as of the commencement of the case, and of property of the estate." 28 U.S.C. § 1334(e)(1).

Second, Rule 7070 confirms that Bankruptcy Courts (which are "units" of the District Courts) may implement the lien removal power embodied in Rule 7070.

Specifically, implementing Rule 7070 is an exercise of the judicial power to enforce the judgment regarding wholly unsecured deeds of trust incident to the § 1327 confirmation order, which, as noted above, is a final judgment with res judicata effect.

Such an exercise of judicial power is a "core proceeding" that a bankruptcy judge may hear and determine on multiple bases. It concerns the allowance and disallowance of claims. 28 U.S.C.

---

[7]The Advisory Committee Note to the 1937 adoption of Rule 70 explains:

> Compare Equity Rules 7 (Process, Mesne and Final), 8 (Enforcement of Final Decrees), and 9 (Writ of Assistance). To avoid possible confusion, both old and new denominations for attachment (sequestration) and execution (assistance) are used in this rule. Compare with the provision in this rule that the judgment may itself vest title, 6 Tenn. Ann. Code (Williams 1934), § 10594; 2 Conn. Gen. Stat. (1930), § 5455; N.M. Stat. Ann. (Courtright, 1929), § 117-117; 2 Ohio Gen. Code Ann. (Page 1926), § 11590; and England, Supreme Court of Judicature Act (1925), § 47.

Fed. R. Civ. P. 70, Advisory Committee Note 1937 Adoption.

§ 157(b)(2)(B). It involves determination of validity, extent, or priority of liens. Id. § 157(b)(2)(K). It is a determination incident to confirmation of a plan. Id. § 157(b)(2)(L). It affects the adjustment of the debtor-creditor relationship. Id. § 157(b)(2)(O).

The specific Bankruptcy Code provision permitting lien removal is the language in § 105(a) that authorizes "any order, process, or judgment that is necessary or appropriate to carry out the provisions of" title 11. 11 U.S.C. § 105(a).

Since Federal Rule of Bankruptcy Procedure 7070 is explicit about the power, it follows that a Rule 7070 order must qualify as an example of an order "necessary or appropriate to carry out the provisions" of a Bankruptcy Code § 1327 confirmation order with respect to a wholly unsecured deed of trust.

In sum, Congress placed the Rule 7070 tool in the Bankruptcy Court's toolbox. Regardless of state law, the tool is available nationwide to deal with mortgagees who do not timely reconvey deeds of trust that are "void" under federal law.

## II

### Chapter 13 Lien Stripping Procedure

Upon completion of payments under a confirmed chapter 13 plan, a lien that secures an "allowed" claim that is not an "allowed secured claim," (i.e., supported by $0.00 value) becomes "void." 11 U.S.C. § 506(d). The lien is said colloquially to be "stripped." A plan that provides for such lien stripping will treat the "allowed" claim on the stripped lien as an unsecured claim to be paid pro rata with other allowed unsecured claims.

The requisite lien valuation is made before plan confirmation by the court through a contested hearing to determine the value of the property as of the filing of the chapter 13 petition minus the amounts of senior liens. That hearing is the lienor's due process opportunity to be heard on value. If senior liens exceed the value of the property, then junior liens are valued at $0.00 and treated as wholly unsecured.

If a lien on the debtor's principal residence is determined to be wholly unsecured as a result of the valuation, then the chapter 13 plan may provide for voiding or modifying the lien on the basis that it is not "secured." In other words, a mortgage is not a "secured claim" if no value in the property supports it. 11 U.S.C. § 1322(b); <u>Zimmer v. PSB Lending Corp. (In re Zimmer)</u>, 313 F.3d 1220, 1222-27 (9th Cir. 2002); <u>In re Frazier</u>, 448 B.R. 803, 810 (Bankr. E.D. Cal. 2011) (Sargis, BJ), <u>aff'd</u>, 469 B.R. 889 (E.D. Cal. 2012).

The value so determined at the valuation hearing, and the treatment of the claim proposed in the plan, merges into the final chapter 13 plan confirmation order.

Confirmation of a chapter 13 plan: (a) binds each creditor; (b) vests all property in debtor unless otherwise provided in plan; (c) such vesting is free and clear of any claim or interest of any creditors provided for by the plan unless otherwise provided in the plan. 11 U.S.C. § 1327.

As noted above, plan confirmation is a final judgment with res judicata (claim preclusion and issue preclusion) effect, including valuation issues. <u>Bullard v. Blue Hills Bank</u>, 575 U.S. 496, 502 (2015); <u>Espinosa v. United Student Aid Funds, Inc.</u>, 559

U.S. 260, 270 (2010); <u>Enewally v. Wash. Mut. Bank (In re Enewally)</u>, 368 F.3d 1165, 1172-73 (9th Cir. 2004).

Upon completion of plan payments under the confirmed plan, liens that have been determined to be wholly unsecured become "void" pursuant to § 506(d).[8]

"Void" in § 506(d) means of "no legal effect" or "null." The purpose of § 506(d) "is to nullify a creditor's legal rights in a debtor's property if the creditor's claim is 'not allowed' or disallowed." <u>HSBC Bank USA, Nat'l Ass'n. v. Blendheim (In re Blendheim)</u>, 803 F.3d 477, 489 (9th Cir. 2015).

Permanent lien-voidance occurs upon completion of chapter 13 plan payments, which occurrence is before the case closes and regardless of whether the debtor is eligible for a discharge.

The lien on property is <u>in rem</u> in nature. In contrast, the bankruptcy discharge is an <u>in personam</u> matter that eliminates the personal liability of the debtor.

A recorded lien on real property that has become "void" needs to be terminated in the land records. <u>Blendheim</u>, 803 F.3d at 492-95; <u>Martin v. CitiFinancial Services, Inc. (In re Martin)</u>, 491 B.R. 122, 129-30 (Bankr. E.D. Cal. 2013) (Sargis, B.J.).

While the debtor may have lingering personal liability on the unsecured note debt until the discharge is entered, the existence of residual personal liability is not a justification

---

[8]It can be argued that § 506(d) is not essential to a "strip off" because the cram down effects of §§ 1327 and 1328(b)(2) suffice. David Gray Carlson, <u>The Housing Bubble and Consumer Bankruptcy (Parts I and II)</u>, 97 Am. Bankr. L.J. 396, 425-39 (2023). But, law of the Ninth Circuit treats § 506(d) "voidness" as important. <u>Blendheim</u>, 803 F.3d at 492-97. It is hard to ignore a precise provision that applies to all chapters.

for delaying reconveyance of a "void" deed of trust. Rather, it is an opportunity for creditor mischief to delay reconveyance as leverage to get payment on discharged debt.

III

Lien Removal Precedent

A

Federal Law

The federal lien removal power is implicit in a consistent line of decisions applicable in this district from the Bankruptcy Court, the District Court, the Bankruptcy Appellate Panel, and the Court of Appeals.

The law of the Ninth Circuit authorizing lien stripping was established in Zimmer, 313 F.3d at 1222-27. And, the Ninth Circuit has clarified that the in rem right to avoid a lien is not affected by a debtor's ineligibility for an in personam discharge. Blendheim, 803 F.3d at 489-91.

The Bankruptcy Appellate Panel has endorsed the federal lien removal power. Freeman v. Nationstar Mortgage LLC (In re Freeman), 608 B.R. 228, 235 (9th Cir. BAP 2019).

The District Court in this district likewise has blessed the federal lien removal power. In re Frazier, 469 B.R. 889 (E.D. Cal. 2012)(England, D.J.).

Bankruptcy Judge Sargis of this court has written extensively on the problem. In re Frazier, 448 B.R. 803, 810 (Bankr. E.D. Cal. 2012), aff'd, 469 B.R. 889 (E.D. Cal. 2012) (anticipating Blendheim by approving lien stripping without discharge); Martin, 491 B.R. at 126-27, cited with approval,

1    _Freeman_ 608 B.R. at 235; _Luchini v. JPMorgan Chase Bank, N.A. (In_

2    _re Luchini)_, 511 B.R. 664, 671-73 (Bankr. E.D. Cal. 2014).

3        Until PHH raised the issue, defendants in the cited lien

4    removal cases have not questioned the existence of the federal

5    lien removal power. This decision addresses PHH's objection.

6        A confusing aspect of some of the decided cases is a

7    tendency to discuss state law as a supplementary _ratio decendi_ to

8    show the federal rule is consistent with long-settled California

9    law that deeds of trust are accessory to a debt and that when the

10   debt is $0.00, the deed of trust is automatically extinguished.

11   Notation of state law should not be misunderstood. Even though

12   state-law generally controls property rights in bankruptcy, state

13   law does not trump the nationwide federal lien removal power.

14       PHH's contention in this case that there is no federal

15   statutory or common law lien removal authority necessitates

16   explaining federal lien removal. The salient point is that it is

17   a federal power applicable in every state, even though state law

18   (as in California) may reach the same result.

19       The federal lien removal authority, independent of state

20   law, is firmly rooted in more than a century of federal law.

21

22                                B

23                          California Law

24       Although federal lien removal authority is supreme, we are

25   dealing with property rights generally governed by state law.

26   Here, California law incidentally dictates the same result.

27       In prior decisions, Judge Sargis of this court exhaustively

28   analyzed California law regarding the consequences of a debt of

                                14

1  $0.00 on a California deed of trust. <u>Martin</u>, 491 B.R. at 126-27;

2  <u>cited with approval</u>, <u>Freeman</u>, 608 B.R. at 235.

3      A deed of trust providing real property security for a debt

4  is treated as a mortgage with a power of sale. <u>Bank of Italy</u>

5  <u>Nat'l Trust & Savings Ass'n v. Bentley</u>, 217 Cal. 644, 657 (1933).

6      A California real property lien or security interest cannot

7  exist without an underlying obligation to be secured. <u>Alliance</u>

8  <u>Mortgage Co. v. Rothwell</u>, 10 Cal.4th 1226, 1235 (1995).

9      A California lien is deemed "accessory to the act for the

10  performance of which it is a security." Cal. Civ. Code § 2909.

11  <u>Freeman</u>, 608 B.R. at 235; <u>Martin</u>, 491 B.R. at 127.

12      As "accessory" to the debt it secures, a lien or security

13  interest does not have any additional, independent validity once

14  there is no longer an obligation to be secured. 4 WITKIN, SUMMARY OF

15  CALIFORNIA LAW, 10th ed., § 47.

16      The fundamental requirement that a valid, enforceable lien

17  requires an existing indebtedness has been bedrock California law

18  since 1858. <u>Coon v. Shry</u>, 209 Cal. 612, 615 (1930) (citing 5

19  California Supreme Court decisions between 1904 and 1858).

20      Hence, when a California mortgage debt goes to $0.00, the

21  lien securing that debt is extinguished by operation of law.

22      A consequence of liens being "void" under federal law is

23  that they correlatively are extinguished under California law.

24

25                                  IV

26                    Pleading Federal Lien Removal

27      The Complaints allege the federal lien removal power in two

28  counts: declare value of lien as $0.00 and extinguish lien.

Whether a formal declaration is necessary is doubtful as the predicate determinations have previously been made.

The merit of the assertion of the value of the respective liens as $0.00 is beyond cavil. The controlling property values were fixed by the orders confirming the chapter 13 plans.

Chapter 13 plan confirmation orders are final judgments with claim and issue preclusion effect. <u>Bullard</u>, 575 U.S. at 502; <u>Espinosa</u>, 559 U.S. at 270; <u>Enewally</u>, 368 F.3d at 1172-73.

The values of the subject junior liens, effective on completion of plan payments, were conclusively fixed as $0.00 in the plan confirmation orders. The values matured to $0.00 and became final upon completion of plan payments and the filings of the Chapter 13 Trustee's Notice of Completed Plan Payments.

It follows that there is nothing left to declare regarding value in a declaratory judgment.

The only remaining step is to clear the cloud on title by removing the lien.

V

<u>Duty to Reconvey Deed of Trust and Enforcement</u>

Although the wholly unsecured liens are "void" under federal law upon completion of chapter 13 plan payments because $0.00 is owing and are extinguished under California law, the recorded Deeds of Trust that are accessory to the debt under California law remain of record and continue to function as a cloud on title. The cloud dissipates only upon reconveyance or removal of the deeds of trust from the record.

The cloud on title is not harmless. It stymies the debtor's

ability to engage in transactions, such as refinancing or selling the real property.

The lender, by virtue of the contractual terms of the deeds of trust, has a contractual duty to request that the trustee reconvey upon payment of all sums secured by the deeds of trust.[9] Payment means when the debt is $0.00.

Completion of chapter 13 plan payments on a plan in which the subject debt has been valued by the court at $0.00 satisfies the performance contingency inherent in the plan. At that point, the debt, beyond cavil, is $0.00.  It follows that all sums secured by the affected deeds of trust have been paid.

### A

The lender thereupon has a federal duty to request that the trustee reconvey the deed of trust on the void debt.

If voluntary reconveyance does not timely occur following completion of chapter 13 plan payments, then the debtor is entitled to invoke the federal lien removal power in an adversary proceeding seeking involuntary reconveyance.

### B

Coincidentally, California imposes a statutory duty to reconvey at Civil Code § 2941, on pain of actual damages and statutory damages of $500.00.

---

[9]Both deeds of trust in these cases state:

Reconveyance: Upon payment of all sums secured ... Lender shall request Trustee to reconvey the property ...

Buettner-Elkins Deed of Trust ¶ 20; Krone Deed of Trust ¶ 22.

1

### Civil Code § 2941

The mortgagee or assignee of the mortgagee (i.e., PHH) within 30 days after any mortgage has been satisfied must execute a certificate of the discharge thereof and to record it or cause it to be recorded in the office of the county recorder in which the mortgage is recorded.  Cal. Civ. Code § 2941(a).

The beneficiary or assignee of the beneficiary must also execute and deliver to the trustee the original note, deed of trust, request for a full reconveyance, and other documents as may be necessary to reconvey or cause to be reconveyed, the deed of trust. Cal. Civ. Code § 2941(b)(1).

2

As Judge Sargis has explained, § 2941(b)(1) imposes an affirmative obligation on the beneficiary of the deed of trust to instruct the trustee under the deed of trust to issue a full reconveyance when the underlying obligation has been satisfied. Luchini, 511 B.R. at 672; Martin, 491 B.R. at 130.

If the statutory duty is not satisfied within the time specified by § 2941, then the debtor is entitled to actual damages and $500.00 statutory damages. Cal. Civ. Code § 2941(d).

3

PHH's 30 days under § 2941 commenced upon satisfaction of the mortgages by completion of chapter 13 plan payments. The logical measuring date for the mortgages being "satisfied" within the meaning of § 2941 is the date of entry on the court's docket

of the Chapter 13 Trustee's Notices of Completed Plan Payments.[10]

PHH was derelict in its § 2941 duties to Krone as of October 11, 2020, but he did not sue PHH until June 2, 2022. Full reconveyance was recorded August 22, 2022

PHH was derelict in its § 2941 duties to Buettner and Elkins as of October 24, 2021, but they did not sue until March 4, 2022. Full reconveyance was recorded March 23, 2022.

PHH concedes a § 2941 violation and that the plaintiffs are each entitled to $500.00 in statutory damages. PHH contends that the Plaintiffs have identified no actual damages and contends that attorney's fees are not available for § 2941 violations.[11]

VI

Attorneys' Fees

The main bone of contention in this summary judgment motion is whether attorneys' fees may be awarded for plaintiffs' efforts to get PHH to perform its duty to reconvey.

A

Federal Lien Removal Attorneys' Fees

Federal lien removal decisions hold that contractual

---

[10]For Krone, the 30 days commenced September 11, 2020. For Buettner and Elkins, the 30 days commenced September 24, 2021.

[11]PHH attacks the breach of contract count as not pled in sufficient detail. Such a defect might eventually warrant dismissal, but not until after an opportunity for a more definite statement. PHH's contention that it had no duty to reconvey upon completion of chapter 13 plan payments because Krone was earlier in default lacks substantial merit as a defense to the federal lien removal power – but it does evince a antediluvian corporate mindset that might explain PHH's 710 days of sloth.

19

attorneys' fee clauses in deeds of trust apply to the federal

lien removal power. <u>Blendheim</u>, 803 F.3d at 501-02; <u>Luchini</u>, 511

B.R. at 678-81; <u>Martin</u>, 491 B.R. at 130.

1

<u>Deed of Trust Contract Provisions</u>

Here, the respective deeds of trust provide for reasonable

attorneys' fees and costs.[12] Likewise, the promissory notes

contain attorneys' fees provisions.[13]

2

<u>California Civil Code § 1717</u>

California prohibits non-reciprocal attorneys' fee clauses

in contracts in a manner that makes an otherwise unilateral right

to attorneys' fees reciprocally binding upon all parties in

actions to enforce the contract. Cal. Civ. Code § 1717(a).[14]

The Ninth Circuit holds that Civil Code § 1717 reflects a

---

[12]Krone Deed of Trust ¶¶ 8, 18, & 21; Buettner-Elkins Deed of Trust ¶¶ 7, 17, & 18.

[13]Krone "Note(Secondary Lien)" ¶ 6; Buettner-Elkins "Note and Security Agreement" ¶ 10.

[14]Civil Code § 1717(a) provides:

In any action on a contact, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a).

"fundamental policy" of the state of California for choice of law purposes that overcomes contrary provisions in contracts choosing the law of another jurisdiction. <u>First Intercontinental Bank v. Ahn</u>, 798 F.3d 1149, 1156-58 (9th Cir. 2015).

The adversary proceedings to enforce the § 506(d) judicial determinations that the deeds of trust are "void" qualify as "actions on a contract" for purposes of Civil Code § 1717.

PHH had not reconveyed the Buettner and Elkins deed of trust in the in 159 days following the filing of the Notice of Completed Plan Payments in their case when they filed their adversary proceeding March 4, 2022. The subsequent reconveyance by PHH makes Buettner and Elkins "prevailing parties" for purposes of Civil Code § 1717.

PHH had not reconveyed in the 649 days following the filing of the Notice of Completed Plan Payments in Krone's case when he filed his adversary proceeding June 22, 2022. The subsequent reconveyance by PHH makes Krone "prevailing party" for purposes of Civil Code § 1717.

3

### Federal Lien Removal Attorneys' Fee Awards

Federal lien removal actions by chapter 13 debtors have been held to qualify for prevailing party attorneys' fees under Civil Code § 1717. <u>Blendheim</u>, 803 F.3d at 501-02; <u>Luchini</u>, 511 B.R. at 678-81; <u>Martin</u>, 491 B.R. at 130.

In <u>Martin</u>, the court ruled fees were available under Civil Code 1717 and required a motion for fees, the outcome of which is not in the reported decision. <u>Martin</u>, 491 B.R. at 131-32.

Of particular note for PHH and its ilk is the prescient observation in Martin that attorneys' fees for such actions could be expensive for the creditor.[15]

In Blendheim, on remand from the Ninth Circuit to consider fees and costs, the bankruptcy court applied Washington's reciprocal fee statute, RCW § 4.84.330, which was modeled on California Civil Code § 1717. It awarded "$139,171.83 in attorneys' fees and costs thus far," with additional amounts available for post-remand activity. In re Blendheim, 2016 WL 4264058 at *6 & *13 (Bankr. W.D. Wash. 2016)

In Luchini, the fee award was $4,774.75 and costs of $113.00 under Civil Code § 1717.

B

Civil Code § 2941 Attorneys' Fees

PHH contends that Civil Code § 2941 affords it safe harbor

---

[15]Judge Sargis' observation merits repetition:

A consumer debtor and the court do not serve as a "for free title department" processing reconveyances for a creditor. Prevailing plaintiffs may seek recovery of their attorneys' fees and expenses, as this plaintiff has, for the reasonable attorneys' fees and costs to clear a cloud on title following completion of a confirmed chapter 13 plan. Such litigation requires an experienced, sophisticated attorney who understands the interplay between state real property law and federal bankruptcy law to effectively prosecute an action to enforce the Plaintiff's rights obtained through completion of the chapter 13 plan. Such attorneys' fees are not inexpensive, as Plaintiff must go through multiple steps in not only filing and properly serving the Complaint, and having the default entered, but prosecuting a motion providing the court with the sufficient legal and evidentiary basis for entry of a judgment in the litigation.

Martin, 491 B.R. at 132 n.18.

1  from attorneys' fee awards.

2      It reasons from the absence of a specific attorneys' fee
3  provision in § 2941 and decisions that the section does not
4  create a statutory right to fees. E.g. <u>Luchini</u>, 511 B.R. at 677.
5  True enough, but fallacious.

6      The fallacy inherent in its argument is the omission to note
7  that § 2941 neither negates § 1717 nor renders inapplicable basic
8  contractual rights to fees. <u>Luchini</u>, 511 B.R. at 679-80.[16]

9      In short, contractual attorneys' fee provisions in the
10 underlying contracts and deeds of trust remain enforceable.

11     An action premised on § 2941 is an "action on a contract"
12 for which the "prevailing party" is entitled to avail itself of
13 contractual fee rights. <u>Luchini</u>, 511 B.R. at 679-80.

14

15                              VII

16                           <u>Mootness</u>

17     PHH contends that its belated voluntary reconveyances render
18 the adversary proceeding moot. Not so.

19     While the voluntary reconveyances that were made after the
20 adversary proceedings were filed obviated the need for this court
21 to force that result involuntarily by exercising its muscle under
22 its judgment enforcement power, that does not end the story with
23 respect to the federal cause of action.

24     In principle, under Rule 70(e) PHH as disobedient party is

25

26     [16]It is disappointing that PHH's counsel relied on the
27 portion of <u>Luchini</u> rejecting the proposition that § 2941 did not
   create a statutory right to fees but then omitted to note that
28 the <u>Luchini</u> court proceeded to award fees based on contract.
   <u>Compare</u>, <u>Luchini</u>, 511 B.R. at 677, <u>with</u> <u>id</u>. at 679-80.

1  exposed to the possibility of contempt. Fed. R. Civ. P. 70(e).

2      Moreover, belated reconveyances do not moot the prevailing

3  party attorneys' fees issues for the Plaintiffs.

4

5                              VIII

6                       Summary Judgment

7      PHH made this motion for summary judgment. It is not a

8  motion for partial summary judgment. Rather, it places in

9  question the entire Complaint.

10     PHH contends there is no such thing as a federal lien

11  removal cause of action and that attorneys fees are not available

12  to Plaintiffs. There are no genuine issues of material fact

13  regarding those issues. Those contentions are wrong on the

14  merits. Plaintiffs are entitled to judgment as a matter of law.

15     PHH's contentions regarding California Civil Code § 2941 are

16  dubious and are contradicted by federal decisions cited in this

17  opinion. But, in light of this court's conclusions about federal

18  lien removal power and the availability of attorneys' fees, are

19  not essential to the outcome.

20     Mindful that caution is required when awarding relief to a

21  non-moving party, it nevertheless is permissible to grant summary

22  judgment for a non-moving party if the issues were presented in

23  the original motion and the moving party had a full and fair

24  opportunity to ventilate the issues. Gonzales v. CarMax Auto

25  Superstores LLC, 840 F.3d 644, 654-55 (9th Cir. 2016); Gospel

26  Missions of America v. City of Los Angeles, 328 F.3d 548, 553

27  (9th Cir. 2003).

28     Here PHH had a full and fair opportunity to ventilate the

issues. It is incorrect, as a matter of law on both counts.

Accordingly, summary judgment will be granted in favor of the non-moving Plaintiffs.

<u>Conclusion</u>

The Plaintiffs brought meritorious actions to enforce the federal judgments establishing that the respective liens became "void" upon completion of payments under their chapter 13 plans. Defendant PHH did not timely perform its duty under federal and under state law to reconvey the respective deeds of trust that remained as clouds on title. The reconveyances made after these actions were filed make the Plaintiffs prevailing parties on "actions on the contracts" for purposes of California Civil Code § 1717. The Plaintiffs are entitled to attorneys' fees and costs pursuant to the fee provisions in the respective deeds of trust.

Judgments consistent with this opinion will be entered in separate documents.

SO ORDERED

DATE:

_____
Christopher M. Klein
_____
United States Bankruptcy Judge