**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: Hal Edwin Buettner, III, and Michele Kay Elkins, Debtors. | Case No. 16-26531-C-13G |
| Hal Edwin Buettner, III, and Michele Kay Elkins, Plaintiffs, v. PHH Mortgage Corporation, Defendants. | Adv. Pro. No. 22-02015-C Consolidated DCN PGM-3 |
| In re: Kevin Randall Krone, Debtor. | Case No. 15-21528-C-13G |
| Kevin Randall Krone, Plaintiff, v. PHH Mortgage Corporation, and Deutsche Bank National Trust Company, Defendants. | Adv. Pro. No. 22-02038-C Consolidated DCN PGM-3 |

**ORDER AWARDING FEES**

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

Plaintiffs' counsel in these consolidated adversary proceedings actions seeks an award of prevailing party attorney's fees under California Civil Code § 1717 in litigation involving California notes and deeds of trust that include fee provisions.

In a published Opinion, this court ruled that plaintiffs are entitled to fee awards as prevailing parties. Buettner v. PHH Mortgage Corp. (In re Buettner), 654 B.R. 927 (Bankr. E.D. Cal. 2023). The issue was whether Bankruptcy Courts have power to order liens removed and to clear title after completion of chapter 13 plan payments that render "void" and "strip off" wholly unsecured mortgage liens pursuant to § 506(d). Id.

The respective promissory notes and deeds of trust in the consolidated cases provide for attorney's fees. California Civil Code § 1717 makes all fee provisions reciprocal in favor of the prevailing party. Hence, the present fee application.

The federal lien removal cause of action that is embodied in Federal Rule of Bankruptcy Procedure 7070, as explained in the published decision, is a species of in rem judgment enforcement in which the judgment being enforced is the final § 1322(b) order confirming the chapter 13 plan, which order has res judicata effect and renders a lien "void" under § 506(d) upon completion of plan payments.

Federal lien removal actions by chapter 13 debtors have been approved and have been held to qualify for prevailing party attorneys' fees where notes and deeds of trust provide for fees. HSBC Bank USA, Nat'l Ass'n. v. Blendheim (In re Blendheim), 803 F.3d 477, 501-02 (9th Cir. 2015); Luchini v. JPMorgan Chase Bank, N.A. (In re Luchini), 511 B.R. 664, 678-81 (Bankr. E.D. Cal. 2014); Martin v. CitiFinancial Services, Inc. (In re Martin), 491 B.R. 122, 129-30 (Bankr. E.D. Cal. 2013)(Sargis, B.J.); cf. In re Frazier, 469 B.R. 889 (E.D. Cal. 2012)(England, D.J.), aff'g 448 B.R. 803 (E.D. Cal. 2011)(anticipating Blendheim).

There was a separate count in the Complaints focused on California Civil Code § 2941, which also requires reconveyance as a matter of state law and provides for a $500 award (plus actual damages), on which count the Plaintiffs also demanded fees. After the Complaints were filed, PHH attempted to moot the action by reconveying and making an Offer of Judgment but refusing to include attorney's fees in the Offer. PHH asserted, incorrectly,

that fee awards are not available in cases premised on § 2941. By continuing to contest the fee issue asserted in the complaint, PHH failed to moot the action and left the door open to decide the count asserting the federal lien removal cause of action with attorney's fees attendant to that cause of action.

Fee Application Rules

Fees are generally based on the "lodestar" formula – the number of hours reasonably expended multiplied by the applicable hourly market rate for legal services.

The pertinent law has long been settled in leading Supreme Court cases and numerous decisions of the courts of appeals. E.g., Hensley v. Eckerhart, 461 U.S. 424 (1983); Blum v. Stenson, 465 U.S. 886 (1984); Alan Hirsch, Diane Sheehey & Tom Willging, AWARDING ATTORNEYS' FEES AND MANAGING FEE LITIGATION, 23-60 (Federal Judicial Center, 3d Ed. 2015) ("FJC FEE LITIGATION").

The fee applicant has the burden of establishing lodestar rate and hours reasonably expended. Hensley, 461 U.S. at 433.

Lodestar Rate

In determining the applicable hourly market rate, the attorney's customary billing rate provides the starting point. E.g., Missouri v. Jenkins, 491 U.S. 274, 285 (1989).

The specific rate takes into account the skill and experience of the attorney in the forum community. Blum, 465 U.S. at 895-96 n.11.

Here, the evidence presented by the applicant is that the $350/hour rate evidenced by the contract with the clients in

these consolidated cases is his customary billing rate.

The $350/hour rate is consistent with the experience and skill of counsel, who is an experienced consumer debtor practitioner in the Sacramento Division of the Eastern District of California specializing in chapter 7 and chapter 13 cases, along with the occasional related adversary proceeding. He has been in practice for about 20 years and has participated in about 8000 bankruptcy cases.

However, his actual experience in litigating more complicated adversary proceedings is more limited. His skill set is focused on the finite set of issues involved in achieving satisfactory resolutions for individual consumers who find themselves insolvent. He does not pretend to have the skills of a more accomplished federal litigator for whom, in this legal marketplace, the lodestar rate is higher than $350/hour.

This adversary proceeding involved an important but obscure federal cause of action that ordinarily would be tackled by a more skilled practitioner deserving of a higher lodestar rate. The applicant deserves credit for having had the insight to recognize that something was fundamentally wrong about the behavior of defendant PHH and to serve up the rudiments of what turned out to be the prevailing theory - he smelled the rat and called it out. In doing so, he persevered against a tenacious opposition interposed by a major national law firm that spared little expense in the course of the defense.

In short, this court is persuaded the appropriate lodestar for this attorney in this case is $350/hour.

Hours Reasonably Expended

In determining hours reasonably expended, the fee applicant must provide appropriate documentation, exercise "billing judgment," and exclude hours not "reasonably expended." Hensley, 461 U.S. at 434.

Those questions necessarily implicate the context of the litigation and of the defense.

The issue is whether at the time the work was performed a reasonable attorney would have engaged in similar time expenditures. Dennis v. Chang, 611 F.2d 1302 (9th Cir. 1980).

The Supreme Court has explained, "the defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." City of Riverside v. Rivera, 477 U.S. 561, 580 n.11 (1986).

Experienced federal judges recommend "making it a practice to compare plaintiff billing records with defendant billing records as one measure of the reasonableness of a fee request." FJC FEE LITIGATION, 31. Defendant PHH has conceded that its fees in the defense of these adversary proceedings were about $28,000.

In the absence of bad faith or failure to cull hours on unsuccessful claims, a properly supported fee application ordinarily will be treated as meritorious. See Mendez v. County of San Bernardino, 540 F.3d 1109, 1127-28 (9th Cir. 2008).

These Fee Applications

Counsel seeks in these two adversary proceedings a total of $59,475 for 117 billable hours at $350/hour, plus 10.5 paralegal hours at $75/hour.

As noted, the documentation provided in these consolidated fee applications is less detailed than what usually is maintained by a law firm whose business model is billing by the hour, with counsel routinely preparing daily time records. The documentation provided here is that of the sole practitioner whose business model does not emphasize hourly billing, but rather tends to rely on a comparatively modest flat fee basis.

Hence, the time records do not appear to be fully contemporaneous in a manner typical of sophisticated law firms. They bear some evidence of having been reconstructed by counsel who does not routinely bill consumer clients by the hour and include some approximations.

Since contemporaneous time records are, strictly speaking, not essential for a fee award, reconstructed records that include reasonable approximations may suffice. Reconstructions and approximations are not fatal, rather they are matters that bear on the weight afforded by the court as it exercises discretion and may warrant an appropriate adjustment on that account.

## Defendant PHH’s Opposition

Defendant PHH, which admits that its counsel billed about $28,000 for its defense, objects that the fee request is excessive and inadequately documented.

PHH objects that: (1) time entries are inflated, confusing, and blocked together; (2) time claimed is disproportionate to actual work product; (3) Plaintiffs fail to account for not responding to Offers of Judgment; and (4) $59,475 is out of proportion to the actual recovery.

PHH urges that the total fee awards to Plaintiffs should not exceed $12,062.50, notwithstanding that it interposed a $28,000 defense.

PHH does not assert that Plaintiffs are not prevailing parties. Indeed, it is beyond cavil that reconveyances of the secondary deeds of trust were not executed and recorded until after the adversary proceedings were filed. Moreover, PHH had stonewalled the plaintiffs and not responded to prior communications from plaintiffs' counsel.

The causation question might be more difficult if PHH had responded with apologies for the oversight and promises to accomplish the reconveyances. In sum, this court is persuaded that the filing of the adversary proceedings was the precipitating cause of the execution and recording of the reconveyances.

## Analysis of Objections

The objections will be addressed seriatim.

### 1

The objection by PHH that the time entries are confusing, inflated, and blocked together has some merit.

The time aspect of the documentation is less precise than what one ordinarily sees in hourly billing in which various tasks are separately accounted for, usually in tenths of hours.

The task documentation is likewise less precise than what one ordinarily sees in hourly billing.

Nevertheless, there is no specific requirement that all fee

applications must follow the usual format.

There are, in essence, two critical questions before the court: (1) Was counsel acting in good faith in rendering the services?; and (2) Did the tasks for which fees are requested appear to be reasonably necessary at the time the services were rendered (as opposed to 20/20 hindsight)?

One must also be mindful that consumer debtors' counsel must deal with the human dimension of the problem of the individual consumer trying to clear debt on the consumer's home. The reality of life for such practitioners is that they are forced to spend time functioning as quasi-psychologists holding their clients' hands as they try to enforce the clients' rights against a faceless institutional creditor represented by sophisticated counsel.

The correlative reality for PHH when dealing with individual consumer debtors on matters so personal as the consumers' homes is that, as in tort, it takes its victims as it finds them and can reasonably be charged with being mindful of the psychological consequences that are inflicted by their passive aggession.

This court is persuaded that the applicant was acting in good faith in rendering services in the causes of his clients. As will be explained, part of the challenge facing the applicant was coping with countering a vigorous and partially-unmeritorious defense interposed by PHH.

Likewise, this court is persuaded that the tasks for which fees are requested were reasonably necessary at the time they were rendered.

The presence of the need to cope with a vigorous and

partially-unmeritorious defense informs the analysis of whether services appeared to be reasonably necessary at the time they were rendered.

Taking into account the vigorous defense advanced by PHH, some of which (as will be seen) was lacking in merit and seemingly made in bad faith, this court is persuaded that the applicant plaintiffs' counsel was acting in good faith and reasonably required additional time to cope with the vigorous defense interposed by PHH. Although another lawyer with a higher lodestar rate might have been able to achieve a similar result in less time, the lower lodestar will tend to be associated with taking longer to do so.

This court is persuaded that the deficient documentation warrants the exercise of discretion to make a downward adjustment in the fee request of twenty percent.

2

Analysis of the objection that the time claimed is disproportionate to the work product an a necessitates ssessment of the nature of the defense that the plaintiffs were required to overcome. That defense was substantial and not entirely made in good faith.

a

The context of the litigation influences the good faith analysis and illustrates what plaintiffs' counsel was up against in litigating with PHH.

(1)

Good faith is a reciprocal concept. A defendant who makes an argument lacking in merit and in dubious good faith as part of the defense is in no position to question the good faith of the plaintiff in dealing with that situation.

Here, PHH argued that, because one of the debtor plaintiffs had been in default before filing the chapter 13 case, PHH was under no obligation to reconvey until the original debt was paid in full: (1) notwithstanding the final and binding federal court decision that the debtor was unsecured; (2) notwithstanding that the chapter 13 plan payments were complete; and (3) notwithstanding that the lien was void as a matter of federal law.

The PHH argument that it is entitled to decline to reconvey until after full payment of the original debt lacks merit and reflects a surprising disregard of the Supremacy Clause of the U.S. Constitution. As suggested in this court's published opinion, it is indicative of the brick wall that PHH had erected, the good faith of which is dubious. Buettner, 654 B.R. at 940 n.11.

While PHH contends that the fees requested are disproportionate to the result achieved, PHH ignores that a substantial portion of the services rendered were on account of the vigor of the PHH defense. Countering the vigorous defense necessarily required addition professional services.

In short, the claimed fees in that context are not out of proportion to the result achieved.

(2)

Another problem probative of lack of good faith by PHH is illegitimate citation of precedent.

PHH cited the decision in Luchini, 511 B.R. at 678-81, as authority for the proposition that attorney's fees are not available under the California Civil Code § 2941 statutory remedy for delayed reconveyances of deeds of trust. In doing so, it cited a snippet from Luchini in which the Luchini court noted that the California legislature did not prescribe a specific attorney's fees remedy for a § 2941 violation.

The problem for PHH is that the holding in Luchini is that attorney's fees are available for violations of § 2941 by virtue of California Civil Code § 1717 where the underlying note or deed of trust provides for attorney's fees.

PHH's snippet from Luchini illegitimately transmogrifies the analysis of that case, which stands for the proposition that the California legislature did not need to create a specific fee provision in § 2941 because § 1717 is up to the task.

The experience of this court is that virtually every note and deed of trust in the modern era contains some form of an attorney's fee clause that potentially triggers § 1717. This case is no exception.

Diametrically misstating the holdings of cases is a problem for PHH and PHH's counsel. It is of ethical proportions that this court does not take lightly. The fee applicant here has had to cope with that problem.

b

Nor is the result achieved as insignificant as PHH urges. PHH tried to confine the issue to California law but, by resisting attorney's fees, left the door open to decision on the federal count. Like the proverbial ostrich, PHH has its head in the sand.

The published decision regarding the federal count articulates the poorly-understood contours of the operation and effect of the federal lien removal power embodied in Federal Rule of Bankruptcy Procedure 7070. The analysis applies nationwide to every state in which reconveyances and mortgage releases are required.

The simple fact of the matter is that in a chapter 13 case the Bankruptcy Court's valuation of a junior lien at zero is an appealable order that has res judicata effect, with the consequence that the attendant lien is void as a matter of federal law effective upon completion of payments under a confirmed chapter 13 plan. Bullard v. Blue Hills Bank, 575 U.S. 496, 502 (2015); Espinosa v. United Student Aid Funds, Inc., 559 U.S. 260, 270 (2010); HSBC Bank USA, Nat'l Assoc. v. Blendheim (In re Blendheim), 803 F.3d 477, 489 (9th Cir. 2015); Enewally v. Wash. Mut. Bank. (In re Enewally), 368 F.3d 1165 1172-73 (9th Cir. 2004).

Upon completion of payments, the judgment is encompassed by Federal Rule of Bankruptcy Procedure 7070, incorporating Federal Rule of Civil Procedure 70, that may be enforced by judicial lien removal. The power is enforceable, inter alia, by contempt. Fed. R. Civ. P. 70(e), incorporated by Fed. R. Bankr. P. 7070.

The decision on the federal lien removal counts amounted to a declaration the Plaintiffs were entitled to an order vesting title promptly upon completion of their chapter 13 plan payments and, borrowing the California reciprocal fee statute, were entitled to attorney's fees. It was an application of Federal Rule of Civil Procedure 70, as incorporated and expanded by Federal Rule of Bankruptcy Procedure 7070 decided adversely to PHH over PHH's opposition that there is no such cause of action.

It is a happy coincidence for the debtor plaintiffs that applicable nonbankruptcy law also provides for attorney's fees on account of the federal cause of action.

3

The objection that fees should be disallowed for not having responded to the Offer of Judgment by PHH is not persuasive.

PHH says it made an Offer of Judgment under Civil Rule 68, as incorporated by Bankruptcy Rule 7068, and complains that the plaintiffs did not respond.

Although perhaps impolite to decline to respond to an Offer of Judgment, Rule 68 does not require a response.

If not timely accepted, it is considered withdrawn and is described as an "unaccepted offer." Fed. R. Civ. P. 68(b), incorporated by Fed. R. Bankr. P. 7068.

An "unaccepted offer" is not admissible except in a proceeding to determine costs. Id.

By excluding attorney's fees from the Offer of Judgment, which fees were an integral part of the Complaint, the PHH Offer of Judgment was not for the complete relief requested and is

admissible only if this fee application qualifies as a "proceeding to determine costs."

From the standpoint of mootness, the consequence of an unaccepted Offer of Judgment is that "with the offer off the table, and the defendant's continuing denial of liability, adversity between the parties exists." Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 156 (2016).

The key consquence of an unaccepted offer is that if the judgment the offeree finally obtains is not more favorable than the unaccepted offer, then the offeree must pay the costs incurred after the offer was made. Fed. R. Civ. P. 68(d).

The problem for PHH is that the ultimate result here is more favorable, not less favorable, than its Offer of Judgment for two reasons.

First, the judgment includes a determination of entitlement to the attorney's fees that PHH asserted were not available.

Second, the result of the declaration of the rights of the parties pursuant to the federal lien removal action applies to PHH nationwide, not merely in California.

4

The objection that the requested fees are out of proportion to the actual recovery is similarly not persuasive.

The fact of the matter is that PHH and its counsel should not have stonewalled the debtors and their counsel when they requested the reconveyances to which they were unquestionably entitled. Rather, PHH should have apologetically admitted to the delay and promised prompt corrective action. Instead, PHH chose

to play litigation hardball and cannot now be heard to complain that it must pay plaintiff debtors' counsel for his troubles.

Conclusion

Counsel seeks in these two adversary proceedings a total of $59,475 for 117 billable hours at $350/hour, plus 10.5 paralegal hours at $75/hour. For the reasons explained, a downward adjustment of twenty percent is an appropriate exercise of judicial discretion on account of imprecise documentation of time and services. Otherwise, the requested fees are appropriate under lodestar standards. Accordingly, fees in the amount of $47,580 are awarded to the fee applicant.

SO ORDERED

Dated: March 08, 2024

United States Bankruptcy Judge

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the Opinion entered in Case No. 22-02038, Krone v. Deutsche Bank National Trust Company et al; and in Case No. 22-02015, Buettner, III et al v. Residential Funding Corporation et al, via BNC, to the following parties:

Peter G. Macaluso
7230 South Land Park Drive #127
Sacramento, CA 95831

Hal Edwin Buettner III
4525 Anatolia Drive
Rancho Cordova, CA 95742

Michele Kay Elkins
4525 Anatolia Drive
Rancho Cordova, CA 95742

Kevin Randall Krone
1154 Wallace Way
Yuba City, CA 95993

Benjamin White
Troutman Pepper Hamilton Sanders LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130